IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:19-CV-236-D

| | |
|---|---|
| DOROTHY A. SEABROOK, | ) |
| Plaintiff, | ) |
| v. | ) ORDER |
| MARK ESPER, Secretary Department of the Army, | ) |
| Defendant. | ) |

On November 12, 2019, Dorothy A. Seabrook ("Seabrook" or "plaintiff"), proceeding pro se, filed an amended complaint against Mark T. Esper ("Esper" or "defendant") alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and the Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq. [D.E. 13]. On November 26, 2019, Esper moved to dismiss Seabrook's complaint for failure to state a claim [D.E. 14] and filed a memorandum in support [D.E. 15]. On November 26, 2019, the court notified Seabrook about the motion to dismiss and that her response was due no later than December 20, 2019 [D.E. 16]. See Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam). Seabrook did not respond.[1] As explained below, the court grants Esper's motion to dismiss and dismisses Seabrook's amended complaint.

I.

Seabrook is an African-American female and employee of the Department of Army ("Army"), and formerly worked as the Deputy Director at the Family Programs Directorate at the United States Army Reserve Command at Fort Bragg, North Carolina. In September 2013, Seabrook met with Ann Clark ("Clark"), Sonia Wriglesworth ("Wriglesworth"), Tad Davis ("Davis"), Rita

---

[1] On February 10, 2020, Seabrook filed a letter with the court concerning a change of address [D.E. 17].

Broadway ("Broadway"), Eleanor Richardson ("Richardson"), and Tim Johnson ("Johnson"). See Am. Compl. [D.E. 13] ¶¶ 5–6, 8; [D.E. 13-3] 3. Clark was the Labor/Management Employee Relations representative. See [D.E. 13-3] 3. Wriglesworth was Seabrook's first line supervisor, and Davis was Seabrook's second line supervisor. See id. at 3. Johnson was the Army's labor law attorney representative. See id. at 16.

At the meeting, the parties discussed whether there was sufficient documentation to support a "needs improvement" rating for Scott Hamilton ("Hamilton"). See id. at 3. Clark attended the meeting telephonically and told Davis to give Hamilton a rating no lower than "3" in the absence of detailed and specific counseling concerning his alleged performance issues and performance improvement plan. See id. at 3. Clark told Seabrook to contact her before conducting counseling, a performance discussion, or developing performance standards with Hamilton. See id. During the meeting, Johnson provided legal advice to Wriglesworth and Davis and agreed with Clark's suggestions. See id. at 4.

After the September 2013 meeting, Seabrook continued to seek Clark's advice concerning Hamilton. See id. at 9. In October 2013, Clark suggested a counseling statement and then suspension as progressive discipline for Hamilton. See id. at 9–10. In January 2014, Clark drafted a counseling statement for Hamilton, and Seabrook issued the statement to Hamilton. See id. at 9.

In January 2014, James Balocki ("Balocki") became Seabrook's second line supervisor. On January 15, 2014, Balocki met with Seabrook for the first time. See id. at 4.

At some point, Seabrook believed that Clark was drafting a notice of proposed suspension for Hamilton based on documentation that Seabrook provided to her. See id. at 9. In February and March 2014, Clark delayed preparing the notice of proposed suspension for Hamilton per Johnson's advice. See id. at 9–10. On March 27, 2014, Clark told Seabrook that Seabrook's proposed disciplinary action for Hamilton was no longer being processed. See [D.E. 13-2] 6.

Beginning in June 2014, the Army investigated Seabrook and Wriglesworth for the work

2

environment that existed under their leadership at the Family Programs Division. See [D.E. 13-3] 13; [D.E. 13-5] 7. Seabrook alleges that Clark, Johnson, and Balocki encouraged a group of employees to share information in order to investigate Seabrook and Wriglesworth. See [D.E. 13-2] 7. The Army investigator spoke to Family Programs Division employees Hamilton, Randy Stephenson ("Stephenson"), Brenda McCall ("McCall"), and Renee Podolec ("Podolec") concerning Seabrook's conduct and leadership and provided statements to the investigator. See [D.E. 13-3] 14. Seabrook alleges that Hamilton manipulated the other employees into a "collective conspiracy to discredit management," including Seabrook. Id. at 22.

On June 23, 2014, the investigation concluded. The investigation found:

> As a direct result of [Seabrook's] negative leadership, [Seabrook has] created a toxic work environment in the Family Programs Division (FPD). [Seabrook's] toxic leadership is conduct unbecoming a federal employee and supervisor[.]
> ....
> [Seabrook has] made inappropriate or belittling comments to FPD and/or made inappropriate physical contact with FPD staff. [Seabrook's] conduct is unbecoming a federal employee and supervisor[.]

[D.E. 13-3] 13, 14; see [D.E. 13-2] 7; [D.E. 13-5] 7. Seabrook alleges the findings were based upon a collaborative effort of Hamilton, Stephenson, McCall, and Podolec to target Seabrook and to deflect attention from their own poor performance. See [D.E. 13-3] 15, 22.

On July 30, 2014, Seabrook received a disciplinary proposal for a 14-day suspension from Balocki or Howard Henderson ("Henderson") on the same day that Wriglesworth was removed from her position. See [D.E. 13-3] 13; [D.E. 13-10] 2–3. Seabrook was escorted from the premises and, while walking through the common areas, many employees saw her. See [D.E. 13-2] 8; Am. Compl. at ¶ 10. Following her escort from the work premises, Seabrook's husband's supervisor called Seabrook's husband into the supervisor's office to discuss Seabrook's escort from her work building. See [D.E. 13-2] 8; Am. Compl. at ¶ 10. On September 8, 2014, Seabrook responded to Major General Visot and denied the investigative findings. See [D.E. 13-3] 14. On October 9, 2014, Major General Visot upheld the 14-day suspension. See Am. Compl. at ¶ 10.

3

On November 2, 2014, Seabrook agreed to a "Management Directed Reassignment" to USAR G-37, another division within Army Reserve Command. [D.E. 13-3] 4. On January 6, 2015, Seabrook filed her first Equal Employment Opportunity ("EEO") discrimination complaint alleging race and sex discrimination. See [D.E. 13-2].

In February 2015, Balocki provided Seabrook her performance evaluation for July 2013 through June 2014. See [D.E. 13-3] 4. Based on the results of the investigation, Seabrook's evaluation for that period of time was "less than favorable." Id.; see [D.E. 13-5], 7. On May 5, 2015, Seabrook filed her second EEO complaint and alleged race, color, and sex discrimination and retaliation. See [D.E. 13-4].

On March 6, 2018, the EEOC Administrative Law Judge ("ALJ") rejected Seabrook's EEO claims and granted summary judgment to the Army. See [D.E. 13-6]. Seabrook appealed the ALJ's decision. See [D.E. 13-7]. On August 31, 2018, the EEOC affirmed the ALJ's decision and denied relief to Seabrook. See [D.E. 13-8].

II.

A motion to dismiss under Rule 12(b)(6) tests the complaint's legal and factual sufficiency. See Ashcroft v. Iqbal, 556 U.S. 662, 677–80 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554–63 (2007); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). To withstand a Rule 12(b)(6) motion, a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quotation omitted); see Twombly, 550 U.S. at 570; Giarratano, 521 F.3d at 302. In considering the motion, the court must construe the facts and reasonable inferences "in the light most favorable to the [nonmoving party]." Massey v. Ojaniit, 759 F.3d 343, 352 (4th Cir. 2014); see Clatterbuck v. City of Charlottesville, 708 F.3d 549, 557 (4th Cir. 2013), abrogated on other grounds by Reed v. Town of Gilbert, 576 U.S. 155 (2015). A court need

4

not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 678–79. Rather, a plaintiff's allegations must "nudge[ ] [her] claims," Twombly, 550 U.S. at 570, beyond the realm of "mere possibility" into "plausibility." Iqbal, 556 U.S. at 678–79.

The standard used to evaluate the sufficiency of a pleading is flexible, "and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (quotation omitted). Erickson, however, does not "undermine [the] requirement that a pleading contain 'more than labels and conclusions.'" Giarratano, 521 F.3d at 304 n.5 (quoting Twombly, 550 U.S. at 555); see Iqbal, 556 U.S. at 677–83; Coleman, 626 F.3d at 190; Nemet Chevrolet Ltd., 591 F.3d at 255–56; Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009). Although a court must liberally construe a pro se plaintiff's allegations, it "cannot ignore a clear failure to allege facts" that set forth a cognizable claim. Johnson v. BAC Home Loans Servicing, LP, 867 F. Supp. 2d 766, 776 (E.D.N.C. 2011); see Giarratano, 521 F.3d at 304 n.5.

When evaluating a motion to dismiss, a court considers the pleadings and any materials "attached or incorporated into the complaint." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011); see Fed. R. Civ. P. 10(c); Thompson v. Greene, 427 F.3d 263, 268 (4th Cir. 2005). A court also may take judicial notice of public records without converting the motion to dismiss into a motion for summary judgment. See, e.g., Fed. R. Evid. 201(d); Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007); Philips v. Pitt Cty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

III.

In her amended complaint, Seabrook presents the procedural history of her case and a factual summary of her EEO complaints. See [D.E. 13] ¶¶ 5–20. Seabrook's recitation of the procedural history fails to state a plausible claim for relief. See, e.g., McCleary-Evans v. Md. Dep't of Transp.,

State Highway Admin., 780 F.3d 582, 585–88 (4th Cir. 2015); Wriglesworth v. Fanning, No. 5:16-CV-686-D, 2017 WL 2819771, at *2 (E.D.N.C. June 28, 2017) (unpublished). Furthermore, the court need not search through Seabrook's 96 pages of exhibits to find or construct a plausible claim for relief on Seabrook's behalf. See Beaudett v. Cty of Hampton, 775 F.2d 1274, 1277–78 (4th Cir. 1985); Obataiye-Allah v. Clark, No. 7:14CV00016, 2014 WL 793152, at *1 (W.D.Va. Feb. 26, 2014) (unpublished). To the extent that Seabrook attempts to allege a claim in the amended complaint's procedural recitation, the claim fails.

As for Seabrook's allegations concerning disparate punishment, an employer cannot "discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). "To establish a prima facie case of illegal discrimination in the enforcement of employee disciplinary measures under Title VII," a plaintiff must show that: (1) she is a member of a protected class; (2) the prohibited conduct in which she engaged was comparable in severity to the misconduct of employees outside the protected class; and (3) the disciplinary measures enforced against her were more severe than those enforced against other employees. Cook v. CSX Transp. Corp., 988 F.2d 507, 511 (4th Cir. 1993); see Hurst v. Dist. of Columbia, 681 F. App'x 186, 190 (4th Cir. 2017) (per curiam) (unpublished); Brown v. Goodwill Indus. of E. N.C., Inc., 361 F. Supp. 3d 558, 563 (E.D.N.C. 2019); Witherspoon v. Norfolk S. Corp., No. 5:06-CV-469-D, 2008 WL 516737, at *5 (E.D.N.C. Feb. 25, 2008) (unpublished); Simmons v. The G.E.O. Grp., Inc., 528 F. Supp. 2d 583, 586 (E.D.N.C. 2007). Where plaintiff offers a comparator, the plausibility of her claim depends upon whether that comparator is similarly situated. See Haywood v. Locke, 387 F. App'x. 355, 359 (4th Cir. 2010) (per curiam) (unpublished); Lawrence v. Teachers Ins. & Annuity Assoc. of Am., No. 3:18CV259, 2018 WL 4186417, at *1 (W.D.N.C. Aug. 31, 2018) (unpublished); Silah v. Burwell, 244 F. Supp. 3d 499, 512 (D. Md. 2017); Taylor v. Millennium Corp., No. 1:15-cv-1046, 2016 WL 927185, at *6 (E.D. Va. Mar. 4, 2016). To survive a motion to

6

dismiss, a Title VII plaintiff need only plausibly allege a statutory claim, not a prima facie case. See McCleary-Evans, 780 F.3d at 585–88; Brown, 361 F. Supp. 3d at 563–64.

In her complaint, Seabrook identifies two comparators. Seabrook alleges that Chris Hamilton, a white male working in a different division within the Army, threatened another employee with physical harm at an unknown time and location but was not escorted from the building or suspended. See [D.E. 13-3] 16. Seabrook also alleges that Kim, a white female working in a different division within the Army, communicated a threat of physical harm to another employee at an unknown date and unknown location but was not disciplined, escorted from the building, or suspended. See id.

Seabrook's comparators are not similarly situated. As for Hamilton, Seabrook does not allege his job title, responsibilities, his supervisor, or the result of Hamilton's alleged behavior. Similarly, Seabrook does not allege Kim's full name, her job title, responsibilities, her supervisor, or the result of her alleged behavior. See, e.g., Coleman, 626 F.3d at 190–91; Brown, 361 F. Supp. 3d at 563–65; Burwell, 244 F. Supp. 3d at 512–13; Booth v. County Executive, 186 F. Supp. 3d 479, 486 (D. Md. 2016). Moreover, Seabrook admits that she does not know whether Balocki was aware of Hamilton or Kim's alleged behavior. See [D.E. 13-3] 16; McDougal-Wilson v. Goodyear Tire & Rubber Co., 427 F. Supp. 2d 595, 610 (E.D.N.C. 2006). Thus, the court grants Esper's motion to dismiss Seabrook's disparate-punishment claim.

As for Seabrook's retaliation claims, to state a prima facie retaliation claim in violation of Title VII, an employee must show that (1) she engaged in protected activity, (2) her employer took an action against her that a reasonable employee would find materially adverse, and (3) a casual connection existed between the protected activity and the adverse employment action. See DeMasters v. Carilion Clinic, 796 F.3d 409, 416 (4th Cir. 2015); Foster v. Univ. of Md.-E. Shore, 787 F.3d 243, 250 (4th Cir. 2015); Boyer-Liberto v. Fontainebleau Corp., 786 F.3d 264, 281 (4th Cir. 2015) (en banc); Balas v. Huntington Ingalls Indus., Inc., 711 F.3d 401, 410 (4th Cir. 2013);

7

Bryant v. Aiken Reg'l Med. Ctrs. Inc., 333 F.3d 536, 543 (4th Cir. 2003); Spriggs v. Diamond Auto Glass, 242 F.3d 179, 190 (4th Cir. 2001); Brown v. Goodwill Indus. of E. N.C., Inc., No. 4:17-CV-144-D, 2018 WL 2422315, at *2 (E.D.N.C. May 29, 2018) (unpublished); Johnson v. Pitt Cty. Bd. of Educ., No. 4:16-CV-214-D, 2017 WL 2304211, at *12 (E.D.N.C. May 25, 2017) (unpublished); see also Univ. of Tex. Sw. Med. Ctr. v. Nassar, 570 U.S. 338, 362–63 (2013); Burlington N. & Sante Fe Ry. v. White, 548 U.S. 53, 67–70 (2006). As discussed, to survive a motion to dismiss, a Title VII plaintiff need only plausibly allege a statutory claim, not a prima facie case. See McCleary-Evans, 780 F.3d at 585–88; Brown, 361 F. Supp. 3d at 563–64.

In relevant part, Title VII's retaliation provision prohibits an employer from discriminating against any individual "because [she] has opposed any practice made an unlawful employment practice by this subchapter, or because [she] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). Title VII requires a plaintiff to show that "retaliation was a but-for cause of a challenged adverse employment claim." Guessous v. Fairview Prop. Inv, LLC, 828 F.3d 208, 216–17 (4th Cir. 2016) (quotation omitted); see Nassar, 570 U.S. at 360–63; Huckelba v. Deering, No. 5:16-cv-247-D, 2016 WL 6082032, at *3 (E.D.N.C. Oct. 17, 2016) (unpublished). "Naked allegations of a causal connection between plaintiff's protected activity and the alleged retaliation do not state a plausible Title VII claim." Huckelba, 2016 WL 6082032, at *3. Thus, to survive a motion to dismiss, a plaintiff must plausibly allege a but-for causal connection between her protected activity and the alleged retaliation. See, e.g., Blomker v. Jewell, 831 F.3d 1051, 1059 (8th Cir. 2016); Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 90 (2d Cir. 2015); accord McCleary-Evans, 780 F.3d at 585–88.

In her complaint, Seabrook notes that since 2012, Wriglesworth has filed at least three EEO complaints alleging discrimination. See [D.E. 13-3] 8, 13. Seabrook alleges she was a witness in at least one complaint, and that Clark, Johnson, Balocki and Major General Visot were aware of her

8

participation at the time one of Wriglesworth's EEO complaints was mediated on September 16, 2014. See id. at 8–9. Seabrook also states that she filed her first EEOC complaint in January 2015, and that Balocki issued an unfavorable performance review in February 2015 concerning the July 2013 to June 2014 time period. See [D.E. 13-2]; [D.E. 13-3] 4; [D.E. 13-4].

Viewing the record in a light most favorable to Seabrook, Seabrook does not allege facts that support an inference that her protected activity was the but-for cause of any adverse action. See Nassar, 570 U.S. at 360–63; McCleary-Evans, 780 F.3d at 586; Staley v. Gruenberg, 575 F. App'x. 153, 156 (4th Cir. 2014) (per curiam) (unpublished); DeJarnette, 133 F.3d at 299. Conclusory allegations are insufficient. See Coleman, 626 F.3d at 190–91; cf. Martin v. Duffy, 858 F.3d 239, 248 (4th Cir. 2017). Thus, the court dismisses Seabrook's retaliation claim.

As for Seabrook's hostile work environment claim under Title VII, an employee must prove that (1) she experienced unwelcome conduct, (2) the conduct was based on a protected characteristic under Title VII, (3) the conduct was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere, and (4) the conduct is imputable to the employer. See, e.g., Parker v. Reema Consulting Servs., Inc., 915 F.3d 297, 302 (4th Cir. 2019); Boyer-Liberto, 786 F.3d at 277; Okoli v. City of Balt., 648 F.3d 216, 220 (4th Cir. 2011); EEOC v. Fairbrook Med. Clinic, P.A., 609 F.3d 320, 327 (4th Cir. 2010); Ziskie v. Mineta, 547 F.3d 220, 224 (4th Cir. 2008); Ocheltree v. Scollon Prods., Inc., 335 F.3d 325, 331 (4th Cir. 2003) (en banc); Coleman v. Altec, Inc., No. 5:16-CV-954-D, 2018 WL 4289610, at *3 (E.D.N.C. Sept. 7, 2018) (unpublished); Brown v. Wake Cty. Gov't, No. 5:16-CV-806-D, 2017 WL 2982971, at *5 (E.D.N.C. July 12, 2017) (unpublished); Benjamin v. Sparks, 173 F. Supp. 3d 272, 284 (E.D.N.C. 2016). An employee also must show that her protected characteristic under Title VII was the "but for" cause of the alleged harassment. See, e.g., Gilliam v. S.C. Dep't of Juvenile Justice, 474 F.3d 134, 142 (4th Cir. 2007).

To determine whether conduct was sufficiently severe or pervasive to alter the employee's terms and conditions of employment and create an abusive working environment, the court examines

the allegations both subjectively and objectively. See, e.g., Harris v. Forklift Sys., Inc., 510 U.S. 17, 21–22 (1993). First, the employee must subjectively consider the conduct to be sufficiently severe or pervasive as to alter her conditions of employment. See, e.g., Clark Cty. Sch. Dist. v. Breeden, 532 U.S. 268, 270–71 (2001) (per curiam); Faragher v. City of Boca Raton, 524 U.S. 775, 787–88 (1998); Boyer-Liberto, 786 F.3d at 277. Second, a court views the conduct from the perspective of a reasonable person in the employee's position to determine whether it is objectively severe or pervasive. See, e.g., Breeden, 532 U.S. at 271; Faragher, 524 U.S. at 787–88; Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81–82 (1998); Boyer-Liberto, 786 F.3d at 277.

The objective component helps courts "to police the baseline for hostile environment claims." Mendoza v. Borden, Inc., 195 F.3d 1238, 1244 (11th Cir. 1999) (en banc) (quotation omitted). The court considers all the circumstances, including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris, 510 U.S. at 23; see Parker, 915 F.3d at 304. The conduct must be severe or pervasive to be actionable. See Harris, 510 U.S. at 23; Faragher, 524 U.S. at 787–88; Boyer-Liberto, 786 F.3d at 277–78. Title VII does not create "a general civility code for the American workplace." Oncale, 523 U.S. at 80; see Irani v. Palmetto Health, 767 F. App'x 399, 416 (4th Cir. 2019) (per curiam) (unpublished). Rather, the "conduct must . . . amount to a change in the terms and conditions of employment." Faragher, 524 U.S. at 788; see Boyer-Liberto, 786 F.3d at 277–81. Simple teasing, sporadic rude language, offhand comments, jokes related to a protected status, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment. See Burlington N. & Santa Fe Ry., 548 U.S. at 68–69; Breeden, 532 U.S. at 270–71; Faragher, 524 U.S. at 788; cf. Boyer-Liberto, 786 F.3d at 277–81. Likewise, mere rude or insensitive treatment cannot sustain a hostile work environment claim. See, e.g., Bonds v. Leavitt, 629 F.3d 369, 385–86 (4th Cir. 2011); Baqir v. Principi, 434 F.3d 733, 746–47 (4th Cir. 2006); see also

10

Breeden, 532 U.S. at 270–71; Faragher, 524 U.S. at 787–88; Oncale, 523 U.S. at 81–82; Coleman, 2018 WL 4289610, at *3–4; Brown, 2017 WL 2982971, at *5; cf. Boyer-Liberto, 786 F.3d at 277–81; Walker v. Mod-U-Kraf Homes, LLC, 775 F.3d 202, 207–10 (4th Cir. 2014); Freeman v. Dal-Tile Corp., 750 F.3d 413, 420–24 (4th Cir. 2014); Okoli, 648 F.3d at 220–22. Although hostile work environment claims often involve repeated conduct, an "isolated incident of harassment can amount to discriminatory changes in the terms and conditions of employment, if that incident is extremely serious." Boyer-Liberto, 786 F.3d at 277 (quotations and alterations omitted); see Pryor v. United Air Lines, Inc., 791 F.3d 488, 496 (4th Cir. 2015); Okoli, 648 F.3d at 220 & n.5.

Viewing the record in a light most favorable to Seabrook, Seabrook has failed to allege that her supervisors' decision to stop Seabrook's investigation or punishment of Hamilton created a hostile work environment. See, e.g., Faragher, 524 U.S. at 788; Boyer-Liberto, 786 F.3d at 277–81. Even assuming that Seabrook has alleged a hostile work environment, Seabrook does not allege facts supporting an inference that the hostile environment was created because of Seabrook's sex, color, or race. Furthermore, Seabrook has failed to allege that the conduct was sufficiently severe or pervasive to alter the conditions of her employment. See, e.g., Bonds, 629 F.3d at 385–86; Baqir, 434 F.3d at 746–47; EEOC v. Sunbelt Rentals, Inc., 521 F.3d 306, 318 (4th Cir. 2008); Brown, 2017 WL 2982971, at *6. Accordingly, the court dismisses Seabrook's hostile work environment claim.

IV.

In sum, defendant's motion to dismiss the amended complaint [D.E. 14] is GRANTED, defendant's motion to dismiss the original complaint [D.E. 10] is DISMISSED as moot, and the amended complaint is DISMISSED without prejudice.

SO ORDERED. This  1  day of May 2020.

JAMES C. DEVER III
United States District Judge